U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUN 18 P 3: 21

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cr-00021-cr-1 |
| | ) | |
| JORDAN PHELPS, | ) | |
| Defendant. | ) | |

**ENTRY ORDER GRANTING DEFENDANT'S MOTION TO COMPEL
AND ISSUING A PROTECTIVE ORDER**
(Doc. 23)

On February 26, 2026, Jordan Phelps was charged with two counts of knowingly and intentionally distributing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). On May 8, 2026, Mr. Phelps filed a motion to compel the production of controlled purchase audio and video evidence. (Doc. 23.) On May 22, 2026, the government opposed the motion. (Doc. 24.)

Mr. Phelps is represented by Chandler W. Matson, Esq. The government is represented by Assistant United States Attorney Matthew J. Lasher.

**I.     Factual and Procedural Background.**

In or around December 2025, the Morrisville Police Department (the "MPD") was investigating Mr. Phelps for suspected distribution of controlled substances in Lamoille County, Vermont. During the week of December 7, 2025, Chief of the MPD, Jason Luneau, met with a confidential informant (the "CI"), who had "previously worked" for the MPD and was currently working for the MPD "for monetary compensation that was not contingent on the identity of the target." (Doc. 1-1 at 3 n.1.) The CI has prior convictions in Vermont for operating a vehicle with a suspended license, simple assault, disorderly conduct, violations of conditions of release, driving under the influence of alcohol, and fugitive from justice and prior convictions in New York for criminal possession of a weapon. The CI allegedly advised MPD officers that the CI knew Mr.

Phelps by the name of "Jordy" and "could coordinate a cocaine base . . . transaction" with Mr. Phelps. *Id.* at 3, ¶ 7.

According to the Complaint, the CI called Mr. Phelps's suspected phone number and arranged to meet Mr. Phelps at a planned location and purchase cocaine base from him.

> The entire sequence of events was engineered by [the] MPD, who identified Mr. Phelps as a target, deployed [the] CI to approach him, provided the CI with pre-recorded funds, briefed the CI on the objective, equipped the CI and/or the CI's vehicle with recording equipment, provided surveillance, and then debriefed the CI and recovered the suspected narcotics.

(Doc. 23 at 2.) To conduct the controlled purchase, the CI drove a vehicle equipped with audio and video recording devices to the prearranged location, a residence, and MPD officers performed surveillance from nearby. The CI parked in the driveway whereupon an individual, allegedly Mr. Phelps, exited the residence, approached the vehicle, and sold the CI suspected cocaine base. Thereafter, the CI met with MPD officers, providing them with a bag of 0.9 grams of suspected cocaine base allegedly purchased from Mr. Phelps. Law enforcement recorded the CI's sworn statement about the CI's alleged purchase of suspected cocaine base from Mr. Phelps.

Since Mr. Phelps's indictment on February 26, 2026, the government has made available, for Mr. Phelps's attorney's review only, the audio and video recordings of the controlled purchase. The government has also produced, to Mr. Phelps and his counsel, still frames from the video recordings which allegedly depict Mr. Phelps's face. Despite requests from Mr. Phelps, the government has not disclosed the audio or video recordings of the controlled purchase to Mr. Phelps, nor has it disclosed the identity of the CI to Mr. Phelps or his counsel, which Mr. Phelps claims violates his Due Process rights.

## II.    Conclusions of Law and Analysis.

### A.    Whether the Court Should Require Disclosure of the Audio and Video Recordings of the Controlled Purchase.

Fed. R. Crim. P. 16(a)(1)(E) requires that the government "permit the defendant to inspect and to copy" certain items within its possession if "(i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at

trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii). Similarly, Fed. R. Crim. P. 16(a)(1)(B) requires that the government disclose to a defendant "any relevant written or recorded statement by the defendant" if the "statement is within the government's possession, custody, or control" and "the attorney for the government knows—or through due diligence could know—that the statement exists[.]" Fed. R. Crim. P. 16(a)(1)(B)(i). The government contends that it is not required to disclose the audio and video recordings of the controlled purchase to Mr. Phelps because to do so would jeopardize the identity and safety of its CI.

"The government is not generally required to disclose the identity of confidential informants." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citing *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). Under the "informer's privilege," the government has the "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro*, 353 U.S. at 59. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law[]enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* The informer's privilege, however, is not absolute, and its scope is limited by "the fundamental requirements of fairness." *Id.* at 60. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way[]" and "the trial court may require disclosure[.]" *Id.* at 60-61.

There is "no fixed rule with respect to disclosure" and determining whether disclosure is appropriate "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

A "defendant is generally able to establish a right to disclosure 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'" *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (quoting *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984)). However, "it is not sufficient to show that the informant was a participant in and witness to the crime charged[,]" and "disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense." *Id.*; *but see United States v. Overton*, 2024 WL 1973514, at *5 (W.D. Pa. May 3, 2024) ("Courts generally have not required a criminal defendant to make an affirmative showing of materiality where the confidential informant was the only other participant in the crime charged because in such cases, participation, per se, qualifies the informant as a material witness.") (alterations adopted) (internal quotation marks omitted) (quoting *United States v. Harrison*, 2005 WL 840377, at *3 (E.D. Pa. Apr. 12, 2005)). "Courts routinely deny motions for disclosure of an informant's identity and related impeachment information when the basis for such disclosure is general and speculative." *United States v. Cobb*, 544 F. Supp. 3d 310, 334 (W.D.N.Y. 2021) (collecting cases).

In *Roviaro*, a confidential informant "helped to set up the commission of the crime[,]" "was present at its occurrence[,]" and "was the sole participant, other than the accused, in the transaction charged." *Roviaro*, 353 U.S. at 61, 64. The Supreme Court held that the government was required to disclose the identity of its confidential informant to the defendant, reasoning that the confidential informant was "the only witness in a position to amplify or contradict the testimony of government witnesses[]" and the confidential informant's "possible testimony was highly relevant and might have been helpful to the defense[.]" *Roviaro*, 353 U.S. at 63-64. The Supreme Court further explained:

> So far as [the defendant] knew, he and [the informant] were alone and unobserved during the crucial occurrence for which he was indicted. Unless [the defendant] waived his constitutional right not to take the stand in his own defense, [the informant] was his one material witness. [The

4

defendant]'s opportunity to cross-examine [law enforcement officers who surveilled the transaction] was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. [The informant] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon [the defendant]'s identity or on the identity of the package. He was the only witness who might have testified to [the defendant]'s possible lack of knowledge of the contents of the package that he "transported" . . . to [the informant]'s car. The desirability of calling [the informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the [g]overnment to decide.

*Id.* at 64.

In this case, similar to the informant in *Roviaro*, the CI assisted MPD officers in coordinating the controlled purchase, the CI was the only individual in the vehicle when Mr. Phelps allegedly sold the suspected cocaine base, and the CI was the only individual other than Mr. Phelps who is alleged to have directly participated in the controlled purchase. The government's entire case-in-chief at a potential trial will rely on the audio and video evidence of the controlled purchase and/or the testimony of the CI. As Mr. Phelps points out, serious issues regarding the CI's motivations and credibility as a witness may exist in light of the CI's prior criminal convictions.

Without viewing the controlled purchase video evidence or knowing the CI's identity, Mr. Phelps cannot properly investigate these credibility issues nor

advise counsel as to any relationship that he had with [the] CI (good or bad), whether the CI said or did something that should be challenged, whether the CI said or did things to Mr. Phelps outside of this transaction that would evidence a bias against Mr. Phelps, or whether the manner in which the transaction unfolded bears upon any defense—including entrapment.

(Doc. 23 at 7); *cf. United States v. Murray*, 2018 WL 5318004, at *2 (N.D. Ohio Oct. 29, 2018) ("[T]he [g]overnment asserts that it has video and/or audio recordings of [defendant]'s drug transactions which it intends to produce at trial, and [defendant] has failed to articulate what information the informant can provide, in addition to the recordings, that would be relevant or helpful to his defense, or essential for purposes of

5

fairness."). As a result, although there is audio and video evidence of the controlled purchase and although other MPD officers who surveilled the scene may testify at trial, such evidence and testimony are "hardly a substitute for an opportunity to examine" the CI. *Roviaro*, 353 U.S. at 64; *see also United States v. Davis*, 2018 WL 4373998, at \*9 (S.D.N.Y. Sept. 13, 2018) ("Even where a defendant's meeting with a confidential source was recorded or viewed by law enforcement, there will often be sufficient need to justify disclosure of the informant's identity.") (collecting cases).

The government contends that Mr. Phelps does not establish "why later disclosure" of the CI's identity "in advance of trial upon publication of the witness list and disclosure of Jencks/*Giglio* materials would be insufficient." (Doc. 24 at 5) (italics supplied). In *Davis*, a district court rejected a similar argument because, "[a]lthough the [g]overnment typically discloses Jencks Act materials a few weeks before trial, district courts cannot compel the [g]overnment to provide Jencks Act materials until a witness has testified on direct." 2018 WL 4373998, at \*10 (internal citation omitted).[1] Similarly, "[t]here is no general right of pre-trial discovery of impeachment or *Giglio* materials because such material 'ripens into evidentiary material for purposes of impeachment only if and when the witness testifies at trial.'" *United States v. Helbrans*, 547 F. Supp. 3d 409, 436 (S.D.N.Y. 2021) (alteration adopted) (citation omitted), *aff'd sub nom. United States v. Malka*, 2007 WL 10146084 (2d Cir. Apr. 8, 2025).

To the extent the government argues that the court should adopt a rule that pretrial disclosure of a confidential informant's identity is not necessary where the informant will testify at trial, were the court to adopt such a rule, Mr. Phelps would be materially impeded in his trial preparation without knowledge of who is likely to be the principal witness against him. Because the government does not definitively state whether it will

---

[1] *See also United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009) (finding that "the government had no obligation under *Brady* or the Jencks Act . . . to disclose its interview notes with [an interviewee] because he did not testify at the trial[]"); *United States v. Coppa*, 267 F.3d 132, 145 n.10 (2d Cir. 2001) ("The Jencks Act was enacted to clarify that the [g]overnment need not disclose such statements to the defense until after the [g]overnment witness has testified against the defendant on direct examination in open court.") (citation omitted).

call the CI as a witness at trial and only that it "anticipates" calling the CI as a witness, (Doc. 24 at 4), the proposed rule would not apply.

In light of the importance of the controlled purchase audio and video evidence and the CI's central role in the controlled purchase, the requested evidence is "essential to a fair determination" of Mr. Phelps's case, *Roviaro*, 353 U.S. at 61, and it cannot be effectively confronted if disclosed only if the CI testifies at trial. *See Davis*, 2018 WL 4373998, at *10 ("Given the centrality of [the CI]'s testimony to the [g]overnment's case against [defendant], as the controlled buy is the principal evidence of [defendant]'s participation in the [drug trafficking operation], disclosing [the CI]'s identity only after his testimony is not sufficient – it 'is essential to a fair determination' of [defendant]'s cause that he know the identity of [the CI] in advance of trial.") (citation omitted); *Harrison*, 2005 WL 840377, at *4 ("[W]here, as here, the confidential informant is the 'sole participant, other than the accused, in the transaction charged' and is 'the only witness in a position to amplify or contradict the testimony of government witnesses,' his or her testimony is inherently material to a fair determination of guilt or innocence and highly relevant to the defense of the accused.") (internal citation omitted).

For the foregoing reasons, the court GRANTS Mr. Phelps's motion to compel the production of the controlled purchase audio and video recordings.

### B.    Protective Order.

In order to preserve the government's interest in the safety of witnesses and the integrity of the prosecution, Mr. Phelps consents to the court entering "a protective order that would limit Mr. Phelps'[s] review of the video with counsel only (with no copies being provided to Mr. Phelps for independent retention of the video)." (Doc. 23 at 8.) The court agrees that such precautions are warranted here. The court HEREBY ORDERS that the government permit Mr. Phelps and his counsel to review the controlled purchase audio and video recordings with no copies being provided to them for independent retention. The court FURTHER ORDERS that Mr. Phelps shall use the CI's identity for purposes of his defense and shall not further disclose the CI's identity and warns Mr.

Phelps of the potential of an obstruction of justice charge if this protective order is violated.

## CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Phelps's motion to compel the production of the controlled purchase audio and video evidence, (Doc. 23), and issues a protective order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __18th__ day of June, 2026.

Christina Reiss, Chief Judge
United States District Court